## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND



Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov

101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

September 19, 2023

TO ALL COUNSEL OF RECORD

Re:   *Robert C. v. Comm'r of Soc. Sec. Admin.*
      Civil No. MJM-22-1935

Dear Counsel:

On August 4, 2022, Plaintiff Robert C. commenced this civil action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA," "Defendant") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (ECF 1). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF 9) and Defendant's Motion for Summary Judgment (ECF 11).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. L.R. 105.6. (D. Md. 2021).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be granted, Defendant's motion will be denied, and the SSA's decision will be remanded for further consideration in accordance with this opinion.

**I.   Background**

Plaintiff filed his application for DIB on November 19, 2019, alleging disability beginning on October 30, 2015. (R. 15). Plaintiff's application was initially denied on October 30, 2020, and the initial determination was affirmed upon reconsideration on April 27, 2021. (*Id.*) Thereafter, Plaintiff requested an administrative hearing, and Administrative Law Judge ("ALJ") Jeffrey M. Jordan held a telephone hearing on December 8, 2021. (*Id.*) Plaintiff was represented by counsel and testified at the hearing. (R. 28–56). An impartial vocational expert ("VE") also appeared and testified. (*Id.*) The ALJ issued an unfavorable decision on September 16, 2021. (R. 13–36). On

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 6).

January 6, 2022, the Appeals Council denied plaintiff's request for review (R. 1–6), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then commenced this civil action seeking judicial review under 42 U.S.C. § 405(g).

## II.     The SSA's Decision

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ determines a claimant's disability claims using the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, "the ALJ then assesses the claimant's residual functional capacity ['RFC'], which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering "all of the claimant's medically determinable impairments[,]" regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

When mental impairments are alleged, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. The ALJ is required to rate the limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (known as "paragraph B criteria" for mental disorders). *Id.* § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The rating is based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). To satisfy the paragraph B criteria, the mental impairment must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). If the rating of a limitation is "none" or "mild," then the ALJ may generally conclude that the mental

impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: cardiomyopathy and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). The ALJ assessed Plaintiff's RFC and found that through the date last insured,[2] which was December 31, 2020, he could perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was "limited to occasional postural movements." (R. 18–19). At step four, the ALJ found that "through the date last insured, [Plaintiff] was capable of performing past relevant work as a labor union business representative (DOT[3]#187.167-018, sedentary, SVP 8)" and "[t]his work did not require the performance of work-related activities precluded by [his RFC] (20 CFR 404.1565)." (R. 22). Therefore, the ALJ concluded that Plaintiff was not disabled at any time from his alleged onset date through his date last insured. (R. 23).

### III.    Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

### IV.    Discussion

Plaintiff argues that the ALJ improperly found that Plaintiff can perform his past relevant work at step four. (Pl. Mem. 2–11). Specifically, Plaintiff argues that "his past relevant work was a 'composite job' comprised of work tasks that require more exertion than the single DOT description of 'labor union business representative' and that exceed the ALJ's RFC." (Pl.'s Mem.

---

[2] To be entitled to disability insurance benefits under Title II of the Social Security Act, a claimant must meet the insured status requirement. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant's date last insured is the date upon which the claimant's insured status expires. Plaintiff's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2020—the date last insured. (R. 15). Thus, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. *Id*.

[3] "DOT" stands for the Dictionary of Occupational Titles, published by the Department of Labor.

4).

Past relevant work ("PRW") is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). To determine whether a claimant can perform his PRW, given his RFC, SSA "will ask [the claimant] for information about work [he has] done in the past" and/or "ask other people who know about [his] work." SSA may also "use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' ['DOT'] and its companion volumes and supplements," to obtain needed evidence. 20 C.F.R. § 404.1560(b)(2). A claimant is generally not disabled if he can return to her PRW as he performed it or as it is customarily performed throughout the economy. 20 C.F.R. § 404.1560(b)(2); SSR 82-61, 1982 WL 31387 (S.S.A. 1982).

A composite job is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. "Such situations will be evaluated according to the particular facts of each individual case." *Id*. When "available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert." *Id*.

PRW "may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." Program Operations Manual System (POMS) DI 25005.020, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last accessed September 15, 2023). If the ALJ determines that PRW was a composite job, the ALJ "must explain why." *Id*. "When comparing the claimant's RFC to a composite job as the claimant performed it," the ALJ may find "the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id*. Because "[a] composite job does not have a DOT counterpart," the ALJ should not evaluate it at step four when considering work "as generally performed in the national economy." *Id*.

Here, Plaintiff reported the job title of his past work as "Business Manager" for the International Association of Heath and Frost Insulators, Local 42. (R. 37, 185, 213, 230). According to his work history report dated November 19, 2019, Plaintiff's duties included: "Manage the office, job site visits and work inspections, maintained property, oversee funs [*sic*] general business. Referred employees to companies and jobsites." (R. 214). He reported that he used machines, tools, or equipment; used technical knowledge or skills; and performed writing or other similar duties. (*Id*.) Plaintiff also lifted and/or carried "office material, collapsible tables, chairs and some tree branches," shoveled snow, and performed "various land maintenance." (*Id*.) He further explained that the time spent performing these duties varied each day, stating that he could be sitting and doing paperwork all day; inspecting work at a job site all day, which required climbing ladders, stairs, vessels, or boilers; or holding meetings that involved standing, walking, and talking. (R. 192). Plaintiff described land and building maintenance tasks he performed as involving walking, lifting, and other "laboring activities." (*Id*.)

Plaintiff's work history report dated January 29, 2021, similarly describes his past job duties as including office management; project procurement; property and land maintenance; job assignments and referrals; project inspection; using machines, tools, or equipment; using technical knowledge or skills; and writing or other similar duties. (R. 231). He also reported that his job required (1) walking, standing, sitting, climbing, stooping, kneeling, and crouching; (2) lifting or carrying insulation and tree branches, as well as shoveling snow; and (3) frequently lifting 25 pounds but lifting 100 pounds or more at times. (*Id*.)

Plaintiff further explained his job duties at the 2021 hearing before the ALJ. He testified that he held office hours from about 7:30 a.m. to 9:30 a.m., during which he referred workers out to job sites. (R. 37). After 9:30 a.m., he traveled to different job sites to inspect the work of others and "unloaded materials for [the] apprenticeship school." (*Id*.) He returned to the office from 3:00 p.m. to 4:00 p.m. to perform "office-related tasks" (R. 37, 39). Plaintiff testified that he worked ten hours per day and that, when he was not doing office work, the remainder of his time was spent climbing towers and boilers to inspect commercial/ industrial insulation jobs. (R. 46). Plaintiff "was not doing insulation but was checking the quality and craftsmanship of the work, which required him to climb boilers, towers, pipe racks, and stairs as well as to go into boilers." (Pl. Mem. 6 (citing R. 49)). While in the office, he would also accept deliveries for the apprenticeship school, which were between 40 and 150 pounds in weight, and "take [these deliveries] from the truck to the apprenticeship building." (R. 46–47).

The record includes a letter dated July 19, 2021, from Preston Smith, business manager and secretary of the International Association of Heat and Frost Insulators and Allied Workers. (R. 280). The letter describes the job duties of the business manager of the Local 42 as follows:

(1) Maintaining building and grounds (lawn care, mowing, landscape, fixing minor repairs, and cleaning, ect. [*sic*]);
(2) Keeping office supplies stocked;
(3) Receiving materials for apprenticeship program (weight up to 200 pounds);
(4) On site job inspections[,] climbing towers, boilers (inside and out), vessels, and any industrial or commercial facilities; and
(5) Lobbying, negotiating, job preservation, conference meetings, and local/state meetings.

(*Id*.)

At the hearing before the ALJ, Plaintiff's counsel argued that his PRW is a composite position, but the VE opined that it could not be classified as a composite job. (R. 38–39). The VE classified Plaintiff's past work as a Labor Union Business Representative (DOT #187.167-018). (R. 47–48). According to the DOT, this job classification includes the following:

> Manages business affairs of labor union: Coordinates and directs such union functions as promoting local membership, placing union members on jobs, arranging local meetings, and maintaining relations between union and employers

> and press representatives. Visits work sites to ensure management and labor employees adhere to union contract specifications. May assist in developing plant production and safety and health measures. May negotiate with management on hours, wages, individual grievances, and other work-related matters affecting employees.

DICOT 187.167-018, 1991 WL 671367.

At step four, the ALJ adopted the VE's classification: "Through the date last insured, the claimant was capable of performing past relevant work as a labor union business representative (DOT #187.167-018, sedentary, SVP 8)." (R. 22). The ALJ determined that "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (*Id*.) Specifically, the ALJ found the following:

> The claimant has past work as a labor union business representative (Dictionary of Occupational Titles (DOT) #187.167-018, sedentary, SVP 8).
>
> This job is past relevant work because the claimant performed it within the last 15 years, performed them long enough to learn how to do them, and performed them at substantial gainful activity levels (Exhibits 5D; 2E).
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The vocational expert opined that a hypothetical individual with the above residual functional capacity could perform the claimant's past work as generally performed. The undersigned agrees with the vocational expert as it is consistent with the DOT (SSR 00-4p).

(*Id*.)

The question of whether Plaintiff's PRW was a composite job was a genuine issue raised and discussed at the hearing before the ALJ. At the hearing, Plaintiff's counsel argued that Plaintiff's PRW was a composite job comprised of elements of "insulator" and "business manager." (R. 39). Evidence in support of this contention was presented to the ALJ, including Plaintiff's testimony and work history reports and the letter of Preston Smith indicating that Plaintiff's job duties as business manager for Local 42 regularly involved exertional tasks that exceeded the DOT's description of the work of a labor union business representative. (Pl.'s Mem. 4). Additionally, the VE testified that the labor union business representative occupation "is the closest to the job performed by [Plaintiff], yet it does not totally match." (R. 51) The ALJ determined that Plaintiff was capable of performing his PRW as a labor union business representative, that this work did not require activities precluded by his RFC, and, therefore, that Plaintiff was not under a disability. A different conclusion may have resulted if the ALJ had determined whether Plaintiff's PRW was a composite job. In his decision, however, the ALJ failed to explain whether or why he rejected Plaintiff's argument that his PRW was a composite job. As

such, the Court cannot ascertain whether the ALJ's step four analysis is supported by substantial evidence. Therefore, remand is warranted. *See Mims v. Berryhill*, Civ. No. TMD-16-2813, 2017 WL 3704615, at *6 (D. Md. Aug. 28, 2017) (remanding case "because inadequacy of the ALJ's analysis frustrates meaningful review").

### V.     Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF 9) will be granted, and Defendant's Motion for Summary Judgment (ECF 11) will be denied. The case will be remanded for further proceedings in accordance with this opinion.

A separate Order will follow.

Sincerely,

/S/

Matthew J. Maddox
United States Magistrate Judge